# Wetherill, Appellant, *v.* Gallagher.

*Equity—Jurisdiction—Parties—Large number of parties—Bailment—Boilers—Fixtures.*

Where boilers are delivered to a lessee of a building under what is apparently a contract of bailment, and the lessee, after attaching the boilers to the building and making some payments under his contract, becomes insolvent, and is declared a bankrupt, the original vendor of the boilers may maintain a bill in equity, to prevent interference with the boilers, against the registered owner of the building and certain parties who are alleged to be in collusion with the registered owner to defraud complainant, and also against the mortgagee of the building who objects to the removal of the boilers, and also against the bankrupt and his trustee.

In such a case the common-law remedies of assumpsit, trover and replevin will not afford the complainant either an adequate or effective remedy.

Argued Jan. 25, 1905. Appeal, No. 329, Jan. T., 1904, by plaintiffs, from decree of C. P. No. 5, Phila. Co., June T., 1904, No. 3922, sustaining demurrer to bill in equity in case of Robert Wetherill and Richard Wetherill, copartners, trading as Robert Wetherill & Company, v. Francis G. Gallagher, S. Arthur Love, Emma R. M. Love, The Fidelity Trust Company, surviving executor of Henry Gibson, deceased, and the Downing Paper Company, and James I. Lineaweaver, trustee in bankruptcy of the Downing Paper Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Reversed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in sustaining the demurrer and dismissing the bill.

*John G. Johnson*, with him *Frederick J. Geiger*, for appellant.—It is respectfully submitted that the facts alleged in the bill lay grounds for equitable relief under the following distinct heads of equity jurisdiction: (1) The right of an owner to demand a return of property upon determination of a bailment. (2) The discovery of facts material to a just determination of the issue. (3) The prevention and restraint of the continuance of

acts prejudicial to the rights of individuals.    (4) The affording specific relief when a recovery in damages would be an inadequate remedy.    (5) The prevention of fraud: Kemp v. Westbrook, 1 Ves. 278; White Mts. R. R. Co. v. Bay State Iron Co., 50 N. H. 57; Bank of U. S. v. Biddle, 2 Pars. 31; Mackintosh v. Tracy, 4 Brewster, 59; Eckart v. Gerlach, 12 Phila. 530; Denny v. Brunson, 29 Pa. 382.

The plaintiffs have not a good and sufficient remedy at law: Roberts v. Bank, 19 Pa. 71; Gormley v. Clark, 134 U. S. 338 (10 Sup. Ct. Repr. 554); Boyce v. Grundy, 28 U. S. 210; Brush Electric Co.'s App., 114 Pa. 574; Harper's App., 109 Pa. 9; Simes v. Everson, 46 Pa. 304; Abbott v. Reeves, 49 Pa. 494; Bierbower's App., 107 Pa. 14; Warner v. McMullin, 131 Pa. 370; Mortland v. Mortland, 151 Pa. 593; Penna. R. R. Co. v. Bogert, 209 Pa. 589; Steinmeyer v. Siebert, 190 Pa. 471; Palmer v. Graham, 1 Pars. 476; McKay's Case, 1 Am. Bankcy. Rep. 292.

*E. O. Michener*, for appellee.—The complainant has a full and adequate remedy at law by an action in replevin, and the respondents are entitled to have their contention heard at law and their rights passed on by a jury.

OPINION BY MR. JUSTICE MESTREZAT, March 27, 1905:

Francis G. Gallagher, one of the defendants, by written agreement dated July 10, 1902, leased to the Downing Paper Company, a corporation and one of the defendants, a lot of ground in the city of Philadelphia together with the buildings erected thereon and the machinery and fixtures contained therein, being a plant for the manufacture of paper and felt. The lease was for one year from April 1, 1902, with the right of renewal from year to year on the terms therein set forth. The agreement provided that all betterments in the nature of permanent improvements or additions to the machinery which the lessee might thereafter place on the premises should belong to him and that he might, at any time during the continuance of the lease or any renewal thereof, remove them from the premises.

The plaintiffs, by a written agreement dated December 21, 1903, leased to the Downing Paper Company, another de-

fendant in this suit, two 250 horse power boilers, delivered and erected, including all the brickwork above the floor level, at the latter's power station in Philadelphia, the property leased by Gallagher to the paper company. For the use of the boilers the lessee agreed to pay $1,000 in cash and thereafter $250 per month rental in the form of twenty-five notes, to be dated upon completion of the erection of the boilers, and each note for the said amount to be payable every thirty days. The agreement provided that the lessee company would not sublet, dispose of, or remove from Philadelphia county the boilers without the consent of the lessors; that it would surrender up said property at the expiration of the lease, and that if it failed to comply with any of the provisions of the lease, the lessors should have the right to declare the lease void and to resume possession of the boilers, and in any proceeding for such purpose, with or without recourse to law, the lessee waived the right to bring any action against the lessors. It was further stipulated that upon the surrender of the boilers, the rent having been fully paid, the lessee had the option of purchasing the property for $7,250, the rent received to be applied upon the purchase price.

The plaintiffs installed the boilers on the Gallagher premises and the paper company paid to them the $1,000 and the two promissory notes maturing March 20 and April 20, 1904, respectively, the rental payable at that time by the terms of the lease, but has not made any other payments on the rent or the notes evidencing the rental.

In May, 1904, the Downing Paper Company was adjudged a bankrupt on its own petition and the defendant Lineaweaver was appointed receiver. He refused to pay the plaintiffs the monthly rental due May 20, 1904, under the lease, and subsequently declined, on request, to inform the plaintiffs whether he would pay the rental or preferred that the plaintiffs should exercise their right under the lease and remove the boilers.

The receiver advertised the equity of the bankrupts in the boilers for sale, whereupon the plaintiffs informed him that they exercised their right to declare the lease void and to take possession of the boilers. Subsequently, the District Court of the United States, on application of the plaintiffs, ordered the receiver to withdraw the bankrupt's equity in the property

from sale and permit the plaintiffs to take possession of the property, and that all right, title and interest of the parties and of the bankrupt's creditors to the boilers be referred to a referee, upon the plaintiffs giving bond conditioned to abide the orders of the court and agreeing to submit themselves to the jurisdiction of that court, with which conditions the plaintiffs complied.

The plaintiffs, by permission of the receiver, endeavored to take possession of the property, but were prevented by Gallagher, the landlord of the premises, who notified the plaintiffs that he proposed to retain the boilers as part of the real estate and would resist any attempt to remove them.  The Fidelity Trust Company, executor, is the mortgagee of the real estate leased to the paper company, and it joined the landlord in preventing the removal of the boilers from the premises.

On July 6, 1904, the District Court of the United States made an order granting the plaintiffs leave to institute in the court of common pleas of Philadelphia county " any legal or equitable proceeding for the purpose of determining the title to said boilers."   On July 13, 1904, Lineaweaver was appointed trustee in bankruptcy of the Downing Paper Company.

The plaintiffs filed this bill against Francis G. Gallagher, S. Arthur Love, Emma R. M. Love, The Fidelity Trust Company, surviving executor of the will of Henry Gibson, deceased, and The Downing Paper Company and James I. Lineaweaver, its trustee in bankruptcy.   The bill set forth the above-stated facts and averred that the paper company and its trustee in bankruptcy were, under the lease, trustees of the boilers for the plaintiffs, that the company and its trustee had violated their trust and refused to surrender the boilers, that the plaintiffs believe that the Loves or one of them were the real owners of the premises leased from Gallagher, and that the title was placed in him for the purpose of defrauding the creditors of S. Arthur Love.   It prayed that the plaintiffs be declared owners of the boilers, that the defendants be required to deliver up possession of them, and be enjoined from disposing of or injuring them, that Gallagher and the Loves make discovery as to who is the real owner of the demised premises and be restrained from mortgaging or disposing of the real estate, including the boilers as part thereof, that the defendants

be restrained from preventing the plaintiffs from removing the boilers and that the paper company and Lineaweaver be directed to specifically perform the terms of the lease and surrender the boilers to the plaintiffs.

Gallagher and the Loves demurred and assigned for causes of demurrer that upon the face of the bill the plaintiffs are not entitled to the relief claimed, that the court has no jurisdiction of the bill, and that the plaintiffs have a good and sufficient action at law for the redress of their alleged wrongs.

The learned court below, common pleas No. 5 of Philadelphia county, without filing an opinion, made the following decree: " October 29, 1904, demurrer sustained." From this decree the plaintiffs have appealed.

The sole question in this case is, as suggested by the learned counsel for defendants, whether upon the facts averred in the bill a court of equity has jurisdiction.

We think the facts disclosed by the bill warrant a court of equity in taking jurisdiction. The remedy at law would be neither adequate, complete nor convenient.

Of course, assumpsit against the Downing Paper Company would not avail the plaintiffs, nor do we think trover or replevin would be effective in enforcing the plaintiffs' claim. The boilers were attached to the freehold by the paper company and are, therefore, fixtures and a part of the real estate, unless they retain their character of personalty by virtue of the agreement or lease between the plaintiffs and the paper company. Gallagher, the registered owner of the real estate, is now in possession of it and also of the boilers, and claims the latter as fixtures. It is averred in the bill, however, that S. Arthur Love, or his wife, is the real owner of the premises and that the title was placed in Gallagher for the purpose of defrauding Love's creditors. It is also alleged that Love was the treasurer of the paper company and conducted all the negotiations with the plaintiffs which terminated in the lease of the boilers to that company, and that the detention of the boilers by Gallagher is in pursuance of an agreement between him and the Loves for the purpose of defrauding the plaintiffs of their property rights in the boilers. It, therefore, may be material to the plaintiffs in asserting their claim to the property to ascertain and have determined whether Gallagher or Love

is the real owner of the premises on which the boilers were installed. If Love is the owner his knowledge of and acquiescence in the lease may prevent him from denying the character of the boilers as personal property. It is not alleged that Gallagher had knowledge of the plaintiffs' lease, or of any of its stipulations, but we need not now determine his rights to the boilers as against the plaintiffs. It is apparent, therefore, that the plaintiffs, in enforcing their claim, need equitable relief to enable them to have determined Love's ownership of the premises on which the boilers were placed by the paper company.

Replevin would not be a certain remedy against Gallagher for the property in dispute. The paper company, and not he, installed the boilers on the Gallagher premises. It is claimed that the sheriff on a writ of replevin cannot detach the property and deliver it to the plaintiffs, and that he cannot require Gallagher to give a claim property bond. The latter, therefore, could sell the premises, and it has been held that the title to the boilers would pass to an innocent purchaser without notice of the plaintiffs' claim : Hopewell Mills v. Taunton Savings Bank (Mass.), 15 Am. St. Rep. 235 ; Tibbets v. Horne (N. H.), 23 Am. St. Rep. 31; McFadden v. Allen, 134 N. Y. 489 ;* Landigan v. Mayer (Or.), 67 Am. St. Rep. 521. Under these circumstances, the writ, it is true, can be issued against Gallagher: Bower v. Tallman, 5 W. & S. 556, but if the plaintiffs sustain their claim to the property and the issue is found for them, they will secure simply a judgment for the amount of their claim, which can only be enforced by an execution against Gallagher which will not avail them if he is financially irresponsible. A judgment in assumpsit or trover would be equally as effective.

That Gallagher may not encumber or dispose of the real estate and thereby deprive the plaintiffs of their property, the latter are entitled to an injunction restraining him from taking such action until their claim against him for the boilers has been judicially determined. They are entitled to the most effective remedy given by the law to enforce their claim, and hence they have the right to have the property itself, which

---

*Also reported, 32 N. E. Repr. 21. Reporter.

they allege belongs to them, remain in statu quo, and within the jurisdiction of the court, until their right to it has been determined. They are not compelled to accept the less efficient remedy of the personal security of the individual who is in possession of the property and withholding it from them.

While not sufficient possibly in itself to confer equity jurisdiction, the large number of claimants to this property and the different rights by which they claim it, render the plastic procedure of equity a convenient, as well as an effective, remedy for determining its ownership. The rights and interests of all the parties of, and in, the property in dispute may be adjudicated in this one proceeding, and, in the meantime, the court can protect and preserve the property for the successful claimant.

In this state the action of replevin is not only a proceeding in rem, but also a proceeding against the defendant in the writ personally. Generally speaking, it lies wherever one person claims personal property in the possession of another, provided the claimant has the right of possession ; and there is no doubt that it will lie for property held by the defendant under a contract of bailment. The Act of April 19, 1901, P. L. 88, has made the remedy by replevin more speedy and effective than under the former practice in such actions. The bond required of the plaintiff and the defendant, and the counter-bond by an intervenor under the act of 1901, would afford complete protection to all parties interested in the property in controversy if it was detached from the real estate. But notwithstanding its efficiency in reaching personal property, the action of replevin would fail to meet the requirements of this case. The Downing Paper Company, the lessee, is not in possession of the boilers, nor have they passed to, or are they held by, another as personal property. They are now held by Gallagher, the lessor of the real estate, on which they were placed by the lessee, and he proposes to hold the boilers as part of the real estate. For the same reason, the mortgagee of the real estate denies the right of the plaintiffs to repossess themselves of the property. The facts of this case, therefore, show that the remedy would be inadequate and ineffective in the enforcement of the plaintiffs' claim.

We indicate no opinion as to the rights of any of the par-

ties to this controversy, but hold that under the facts averred by the plaintiffs, the demurrer should have been overruled and the bill should have been sustained.

The decree of the court below is reversed and a procedendo is awarded.